## BEFORE THE UNITED STATES
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE JANUARY 2021 SHORT SQUEEZE TRADING LITIGATION | MDL Docket No. 2989 |

### *CEZANA* AND *CURIEL-RUTH* PLAINTIFFS' RESPONSE IN SUPPORT OF *CHENG* AND *STERLING* PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

## I.      INTRODUCTION

Pursuant to Panel Rule 8.1(c), Plaintiffs Sagi Cezana and Elvia Curiel-Ruth ("Plaintiffs") respectfully submit this response to Plaintiffs Shane Cheng and Terrell Sterling's Motion For Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 For Coordinated or Consolidated Pretrial Proceedings ("the Motion"). Plaintiffs submit this response in support of transferring the actions listed, along with any subsequent tag-along actions (together, the "Related Actions"), for coordinated pretrial proceedings.

The Related Actions currently include more than fifty actions involving the same subject matter, the restriction of securities trading during a 'short squeeze,' with nearly all of these actions filed as class cases, pending in nineteen different federal judicial districts. Plaintiffs are parties in two of the actions, both filed in the Northern District of California. Plaintiffs support an MDL because all of the cases arise out of a common nucleus of operative facts involving the halting of trading at a materially identical time; will involve common discovery and pretrial motion practice; and involve numerous overlapping class claims. Centralization in such a

circumstance will eliminate the likelihood of duplicative discovery and duplicative pre-trial proceedings, reduce the risk of inconsistent rulings with respect to the overlapping class claims, and will further prevent the parties' and the judiciary's resources from being needlessly wasted.

Plaintiffs further support the transfer and assignment of all the Related Actions, as well as any tag-along or subsequently filed actions involving similar facts or claims, to the Northern District of California, where the current pending cases have been assigned to a number of excellent, experienced judges. Currently, there are thirteen Related Actions pending in the Northern District of California alone.

## II.    BACKGROUND

In the latter half of January 2021, the world took notice of certain securities that grew in popularity but were nevertheless maligned by industry elements as susceptible to price drops ("the Securities). These Securities instead saw price increases that defied predictions, growing seemingly exponentially in the midst of a market phenomenon known as a "short squeeze." On or around January 28, 2021, trading of Securities was restricted or limited on a variety of different brokerages and stock trading apps and platforms.

As a result of the alleged harm stemming from the restrictions on trading, plaintiffs across the United States began to file lawsuits, the Related Actions, with Plaintiff Cezana filing his action on January 29, 2021 and Plaintiff Curiel-Ruth filing hers on February 2, 2021. Plaintiffs actions were both filed in the Northern District of California as it is the Judicial District home to a plurality of Defendants. The Related Actions assert similar causes of action – including many claims for damages under antitrust, consumer statutes, and common law – and additionally seek similar relief in the form of damages and injunctive relief. The vast majority of Related Actions are also class actions brought on the behalf of proposed classes of individuals

that directly purchased or tried to purchase Securities from Defendants. Every Related Action raises common questions of fact regarding the nature, scope, and extent of the unlawful conduct of their listed Defendants. The Related Actions additionally raise common questions of fact regarding the scope and extent of unlawful agreements and other anticompetitive conduct by Defendants in violation of federal, state, and common law. Further, the Related Actions all seek trial by jury to adjudicate their claims.

The Related Actions are all in their early stages – with the novel state of the litigations meaning that responsive pleadings or dispositive motions have not been filed by Defendants and discovery has not yet been conducted. *See In re La.-Pacific Corp.*, 867 F. Supp. 2d 1346, 1347 n.2 (J.P.M.L. 2012) ("centralized proceedings will provide for the efficient conduct of discovery") (citation omitted). Centralization and consolidation at this hyper-early stage of the proceedings will allow the eventual MDL court to efficiently resolve the common factual and legal issues of the case and conduct overlapping discovery relating to those issues – prospects that significantly serve the interests of judicial economy.

The facts of the Related Actions lead to added importance for centralization. Pretrial motion practice and discovery involving complex class actions and many antitrust claims will certainly involve overlapping if not duplicative issues. More strikingly, the Related Actions consist of proposed classes that significantly overlap; thus, the adjudication of motions for class certification will resolve many common questions of fact and law.

## III.    ARGUMENT

### a. TRANSFER OF THE ACTIONS TO ONE COURT FOR CONSOLIDATION OR COORDINATION IS APPROPRIATE UNDER 28 U.S.C. § 1407.

The purpose of multidistrict litigation is to "eliminate the potential for contemporaneous

pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Transfer of related actions to a single district for pretrial proceedings "eliminate[s] duplicative discovery; prevent[s] inconsistent pretrial rulings; and conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig*., 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017). Further, the prompt nature of a JPML ruling can expedite the proceedings. Multidistrict Litigation Manual § 4:27 ("In most cases, the [JPML] decides the matter before it within a short period after arguments are held or after the briefing is completed if the parties waive oral argument.") Any risk of delay in the proceedings is unfounded, as a stay would be short and decisive. *See Pennsylvania ex rel. Kane v. McGraw-Hill Companies, Inc*., 2013 U.S. Dist. LEXIS 49462, at *13 (M.D. Pa. Apr. 5, 2013) (finding that "any delay will be relatively short" because "[t]he stay will only be in effect until the JPML issues a ruling on transferring the matter.") (*citing* Multidistrict Litigation Manual § 4:27).

Pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact, and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *In re Plumbing Fixture Cases*, 298 F. Supp. at 493.

Here, there are already fifty-two pending federal actions in nineteen districts and likely many yet to be filed. Inconsistent judicial rulings in an area of significant national importance affecting tens of millions of Americans through the class action mechanism is precisely the type

of disorderly and chaotic action that consolidation and coordination under Section 1407 was intended to prevent. *In re Multidistrict Private Civil Treble Damage Litig.*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) ("It is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest."). The towering number of related cases in the present MDL make it especially ripe for coordination or consolidation. *C.f.* Multidistrict Litigation Manual § 5:18 (2009) (a prospective MDL with a small number of related cases requires "a much stronger showing of benefits.")

The transfer of the Related Actions to the same court for consolidated or coordinated proceedings is appropriate here because common questions of law and fact exist, and consolidation or coordination before one court will ensure efficient management of the litigation and avoid inconsistent rulings on this issue of national importance.

### 1.  The Actions Involve Common Factual and Legal Issues

Here, all the Related Actions, and any tag-along actions, will require a determination of whether the restriction on the trading of certain Securities on Defendants' platforms was lawful. Additionally, all the Related Actions will need to determine the applicability of any arbitration clauses involved in the relevant contracts. Section 1407 does not require a majority of common factual issues as a strict condition for transfer, only that there are common questions presented which justify consolidation and coordination. *See*, e.g., *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) ("To those defendants opposing transfer because they wish to litigate the arguably narrower or more questionable claims against them without entanglement in a litigation that they consider to be much broader in scope, we point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer.").

The fact that the Related Actions do, and tag-alongs likely will, involve a plethora of different geographically dispersed defendants with slightly different contractual language does not preclude consolidation or coordination here because the central issue – whether Defendants acted unlawfully by restricting the trading of Securities beginning on January 28 – will be the same across all cases. *See, e.g., In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009) ("While there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket."); *In re National Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) ("Although individualized factual issues may arise in each action, such issues do not – especially at this early stage of litigation – negate the efficiencies to be gained by centralization."). The Panel and transferee courts have routinely and capably dealt with complexities including plaintiffs with varied claims and injuries, geographically disparate defendants, and multiple defendants whose conduct may not be identical.  *See, e.g., In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d at 1335; *In re National Prescription Opiate Litig.*, 290 F. Supp. 3d at 1379; *In re Sugar Industry Antitrust Litig.*, 427 F. Supp. 1018, 1020-21 (J.P.M.L. 1977) (creating bifurcated east-west MDL to, among other things, accommodate claims against eastern and western defendants); *In re Humana Inc. Managed Care Litig. v. Cigna Corp.*, DOCKET NOS. 1334, 1364, 1366 & 1367, C.A. No. 7:99-3254, C.A. No. 1:00-1658, C.A. No. 2:99-325, 2000 U.S. Dist. LEXIS 15927, at *10-11 (J.P.M.L. Oct. 23, 2000) (consolidating multiple actions against disparate defendants over defendants' objection that the actions should be separate consolidated MDLs organized by defendant); *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 793 F. Supp. 1098, 1099-1100 (J.P.M.L. 1992) (transfer and centralization of claims against multiple

defendants by plaintiffs claiming different injuries); *In re Orthopedic Bone Screw Prods . Liab. Litig*., MDL DOCKET NO. 1014, 1997 U.S. Dist. LEXIS 4940, at *1 (E.D. Pa. Apr. 16, 1997) (more than 2,000 civil actions including claims of different types of injuries caused by products manufactured by dozen of defendants).

The Related Actions uniformly make factual allegations relating to the same series of conduct – the late January 2021 restriction of trading of Securities. *See*, *e.g., Cezana* Compl. at ¶¶ 30-47; *Curiel-Ruth* Compl. at ¶¶ 53-81; *Wieg* Compl. at ¶¶ 24-26; *Cheng* Compl. ¶¶ 135-169; *Omahne* Compl. at ¶¶ 18-27 (W.D. Pa.); *Lagmanson* Compl. at ¶¶ 32-34 (N.D. Ill.); *Courtney* Compl. at ¶¶ 28-29 (S.D. Fl.); *Kelley* Compl. at ¶¶ 30-40 (E.D. Ark.); *Nelson* Compl. at ¶¶ 24-25 (S.D.N.Y.) Further, the related actions uniformly allege restrictions for the same securities – a group that includes GameStop, AMC, and others. *See*, *e.g.*, *Cezana* Compl. at ¶¶ 1-2; *Curiel-Ruth* Compl. at 1-2; *Wieg* Compl. at ¶¶ 14-16; *Cheng* Compl. at ¶ 6; *Omahne* Compl. at ¶¶ 16-18; *Lagmanson* Compl. at ¶¶ 31-32; *Courtney* Compl. at ¶¶ 22-24; *Kelley* Compl. at ¶¶ 34-39; *Nelson* Compl. at ¶¶ 18-20.

The Related Actions further seek to certify similar proposed classes – consisting of either statewide or nationwide classes made up of the users of brokerage services. *See*, *e.g.*, *Cezana* Compl. at ¶¶ 48-49; *Curiel-Ruth* Compl. at ¶ 82; *Wieg* Compl. at ¶¶ 27-30; *Cheng* Compl. at ¶ 75; *Omahne* Compl. at ¶¶ 29-30; *Lagmanson* Compl. at ¶ 43; *Courtney* Compl. at ¶¶ 30-31; *Kelley* Compl. at ¶¶ 42-43; *Nelson* Compl. at ¶¶ 26-27. The Related Actions consistently raise similar legal issues as well – with contractual causes of actions near universal. *See*, *e.g.*, *Cezana* Compl. at ¶¶ 62-75; *Curiel-Ruth* Compl. at ¶¶ 113-126; *Wieg* Compl. at ¶¶ 41-53; *Cheng* Compl. at ¶¶ 220-227; *Omahne* Compl. at ¶¶ 41-52; *Courtney* Compl. at ¶¶ 42-54; *Kelley* Compl. at ¶¶ 63-68; *Nelson* Compl. at ¶¶ 38-50.

Important and relevant to the Panel's decision is that transfer and consolidation or coordination in order to provide a consistent and uniform resolution to the common actual issues will facilitate the efficient adjudication of all the Related Actions even considering any differences that may exist. "[T]ransfer under Section 1407 has the salutary effect of placing all actions in th[e] docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to a just and expeditious resolution of the actions to the benefit of not just some but all of the litigation's parties." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d at 1372; *see also In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d at 1335. The transferee court is especially powerful in its efforts to expedite the conduct of discovery. Multidistrict Litigation Manual § 9:12 ("The plenary power of the transferee courts — perhaps powerful beyond any express grant of authority — is seen in the area of discovery.") The common questions of law and fact that are implicated here are of national importance and weigh heavily in favor of consolidation and coordination.

## 2. Transfer Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.

There are currently fifty-two pending Related Actions in nineteen different districts - but those numbers are likely to continue to rise. As described above, each Related Action involves overlapping factual and legal questions and other similar pretrial issues. Consolidation or coordination will eliminate the likelihood of duplicative discovery and duplicative proceedings that might result in inconsistent rulings and will prevent judicial resources from being needlessly wasted. *See In re Vioxx Prod. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005); *see also*

*In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (concluding that consolidation was necessary to eliminate inconsistent pretrial rulings); *In re A.H. Robins Co. "Dalkon Shield" IUD Prod. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975) (concluding that transfer was necessary to prevent duplication of discovery and to eliminate the possibility of conflicting pretrial rulings).

Without transfer, coordination, and/or consolidation of the Related Actions and any tag-along cases, litigation will needlessly entail judicial inefficiency and unnecessary expense as duplicative discovery and motion practice would prevail across countless jurisdictions and venues. Further, different federal courts, in duplicating rulings on identical issues, could make contradictory findings as to those identical issues. Litigation of this scope and importance must not be beset with such inconsistencies and inefficiencies when a better option is readily available.

### b. THE NORTHERN DISTRICT OF CALIFORNIA IS THE APPROPRIATE FORUM FOR TRANSFER AND CONSOLIDATION

The Northern District of California, San Francisco Division, is the appropriate transferee district for this litigation. First, San Francisco has a strong factual connection to the litigation – being the closest major city to the headquarters of many of the Defendants involved. *See In re National Prescription Opiate Litig.*, 290 F. Supp. 3d at 1379. In particular, the Northern District of California is home to the headquarters or principal base of business of some of the most involved and named Defendants, including but not limited to Robinhood Financial, LLC; Robinhood Markets, Inc.; Sequoia Capital Operations LLC; Charles Schwab Corporation; Charles Schwab & Co. Inc.; Alpaca Securities LLC, Square Inc.; and FF Trade Republic Growth, LLC. Moreover, the facts of the litigation may necessitate a thorough analysis of significant aspects of the technology industry, such as trading applications and social media –

with San Francisco sitting adjacent to Silicon Valley, the epicenter of the technology industry making the Northern District of California uniquely suited to managing a litigation of this nature.

Second, the Northern District of California is geographically accessible forum, located in the Bay Area – one of the largest metropolitan regions in the nation. It has ample accommodations for business travelers. It is also serviced by three separate international airports – San Francisco International Airport, Oakland International Airport, and Norman Y. Mineta San Jose International Airport – providing convenient travel across the country and the world. The infrastructure is certainly in place to host this MDL in San Francisco.

Third, the Northern District of California is home to the most individual Related Actions currently – at the time of writing consisting of thirteen individually filed actions – including the 10 listed at the time of writing of the initial motion to transfer. *See* Dkt 1-1 at 2-3. New cases include *Daniluk v. Robinhood Financial, LLC et al.*, 4:21-cv-00980-KAW; *Clapp et al. v. Ally Financial et al*., 3:21-cv-00896-JCS, and *Saliba v. Robinhood et al*., 3:21-cv-00871-JCS. This represents a significant concentration of cases filed in the Northern District of California, as compared to any other District Court. *In re Multidistrict Private Civil Treble Damage Antitrust Litig. Involving Water Meters*, 304 F. Supp. 873, 874 (J.P.M.L. 1969) (noting "[t]he fact that the majority of these cases" being "filed in the Northern District of California" as "relevant to the selection of that court as the transferee forum."); *accord*, *In re Nifedipine Antitrust Litig.*, 266 F. Supp. 2d 1382, 1382-83 (J.P.M.L. 2003).

Fourth, the majority of plaintiffs' counsel in the Northern District of California have collaborated on pretrial and pre-MDL issues, including work on a uniform due date for any responses to the complaints, and have filed an unopposed motion to relate all the cases pending and any future cases filed to one judge pursuant to the Northern District of California Local

Rules (still pending as of the date of this filing) – with all such efforts streamlining the matters in the Northern District of California and effectuating cost savings while minimizing burdens on all parties. *In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974) ("In short, one of the purposes of coordinated or consolidated pretrial proceedings is to streamline the efforts of the parties and witnesses, their counsel and the judiciary in order to effectuate an overall savings of costs and a minimum of inconvenience to all concerned."); *accord*, *In re Asbestos Prods. Liab. Litig.*, 771 F. Supp. 415, 422 (J.P.M.L. 1991). The undersigned counsel expect that this work will assist in continued working relationship that will assist in proceeding together once all the cases in this MDL are consolidated and transferred to the Northern District. *See In re Aircraft Acci. at Barrow*, 474 F. Supp. 996, 999 (J.P.M.L. 1979) ("Transfer under Section 1407 is thus necessary [to] ensure the cooperation of all parties and counsel.").

Lastly, the Northern District of California has significant experience in handling MDL proceedings in general and complex antitrust class actions, as well as the requisite capacity and resources. *In re Juul Labs, Inc. Mktg., Sales Pracs., and Prods. Liab Litig*., 396 F. Supp. 3d 1366 (J.P.M.L. 2019) (Northern District of California received a consolidation of ten actions as panel "notified of more than forty potentially-related actions"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 U.S. Dist. LEXIS 9944 (N.D. Cal. Jan. 6, 2016); *In re Capacitors Antitrust Litig.*, MDL Case No. 17-md-02801-JD, 2020 U.S. Dist. LEXIS 125627 (N.D. Cal. July 15, 2020); *In re Transpac. Passenger Air Transp. Antitrust Litig*., 536 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008) (antitrust MDL transferred to the Northern District of California); *In re Lithium Ion Batteries Antitrust Litig*., MDL 2420, Case No. 4:13-md-2420 (N.D. Cal. 2012); *All Indirect Purchaser Actions v. Infineon Techs. AG (In re Dynamic Random Access Memory Antitrust Litig.)*, MDL No. 1486, No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 188116

(N.D. Cal. Jan. 7, 2013); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, Case No. 3:07-md-1827 (N.D. Cal. 2007). The current pending cases have been assigned to several excellent and experienced judges. Coordination and consolidation in the Northern District of California is appropriate.

## IV.   CONCLUSION

For the aforementioned reasons, Movants respectfully request that the Panel grant the motion for transfer and coordination or consolidation under 28 U.S.C. § 1407 and transfer the Actions to the Northern District of California.

Dated: March 1, 2021

Respectfully yours,

By: *s/ William M. Audet*

William M. Audet (SBN 117456)
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone:   (415) 568-2555
Facsimile:   (415) 568-2556
waudet@audetlaw.com

*Counsel for Cezana and Curiel-Ruth Plaintiffs*