**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE:<br><br>JANUARY 2021 SHORT SQUEEZE TRADING LITIGATION | **MDL DOCKET NO. 2989** |

**RESPONSE OF ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC AND ROBINHOOD MARKETS, INC. TO PLAINTIFFS' MOTION TO TRANSFER**

In light of the significant number of actions currently filed against Defendants Robinhood Financial LLC ("RHF"), Robinhood Securities, LLC ("RHS") and Robinhood Markets, Inc. ("RHM") (collectively, "Robinhood") in 18 different districts, all of which share common underlying facts, Robinhood agrees that the Short Squeeze Actions present exactly the type of situation that 28 U.S.C. § 1407 is designed to address.  A coordinated proceeding would conserve judicial resources, ensure consistent results and greatly benefit the parties, witnesses and the judicial system.

It is important to note at this preliminary stage, however, that while Plaintiffs allege similar underlying facts concerning Robinhood's independent decision to limit customer purchases for a select number of highly volatile securities from January 28 through February 4, 2021, Plaintiffs do not assert common theories of liability.  Plaintiffs in the majority of actions allege that Robinhood violated a variety of federal securities laws, common law duties and consumer protection statutes.  Contrary to how Shane Cheng and Terell Sterling (the "*Cheng* Plaintiffs") characterize the Short Squeeze Actions as all pleading "a common scheme and conspiracy to suppress, maintain or stabilize the prices for certain securities . . . to artificially restrain the trading of these securities" in violation of federal antitrust laws (Mot. at 1-2), only a

minority of the Short Squeeze Actions actually contain antitrust claims. As a result, while Robinhood agrees a single coordinated MDL would be efficient, Robinhood also notes that the two different types of actions (securities, common law and consumer protection claims as compared to antitrust claims)—and the pre-trial motions and discovery demands attendant to each—would be best dealt with by the transferee court through separate litigation tracks, a pretrial technique that the Panel has previously endorsed.

With respect to venue, Robinhood agrees that the Northern District of California would be an appropriate venue for centralization. Given the number of MDLs already assigned to the Northern District of California, Robinhood also notes that RHS—the Robinhood entity that faced the critical deposit requirements that led to its decision to temporarily restrict trading—is registered in (and has an office in) Lake Mary, Florida, which is in the Middle District of Florida. There are five lawsuits pending in the Middle District of Florida.

## BACKGROUND

Robinhood is an industry-changing financial services company founded on the ethos of putting financial power into the hands of everybody—not just the few and wealthy. Robinhood's securities business currently comprises three entities: RHM (based in Menlo Park, California), which wholly owns RHF (registered in Menlo Park, California), the customer-facing introducing broker, and RHS (registered in Lake Mary, Florida, near Orlando), the clearing broker.

Robinhood has democratized finance by offering zero commission trades, no account minimums and an intuitive, easy-to-understand trading platform available on a computer or mobile device. Once an approved customer would like to place a trade, a number of steps occur behind the scenes. The basic mechanics work as follows: when a customer submits a "buy" or "sell" order for a security and RHF accepts the trade, RHF sends the order to RHS,

which in turn sends the order to market makers to execute the trade. Market makers send a record of the trade back to RHS, which works with a clearinghouse to process the trade. (*See Cobos v. Robinhood, et al.*, No. 21-cv-00843-VAP (C.D. Cal.), Declaration of James Swartwout ("Swartwout Decl.") ¶ 6 (ECF No. 27-3).) It takes two days for the clearinghouse to transfer the stock to the buyer and funds to the seller. (*Id.* ¶ 10.) This is known as the "settlement period" or the "T+2" settlement. (*Id.*)

The two-day period between execution and settlement leaves open a risk that a participant in the transaction will be unable to meet its obligations. A number of protections are in place to reduce this risk. *First*, clearinghouses require clearing brokers, like RHS, to pay a deposit to clearinghouses to facilitate and clear trades until the trades are settled. (*Id.* ¶ 11.) The deposit amount is based on risk, which the clearinghouses calculate by using a volatility multiplier and looking to, among other things, a firm's customer holdings. (*Id.*) To clear and settle customer transactions, clearing brokers, like RHS, must satisfy those deposit requirements, which can change throughout the course of a single day. (*Id.* ¶ 12.)

*Second*, SEC regulations require broker-dealers like RHS and RHF to maintain a certain level of net capital to ensure the ability to promptly satisfy their liabilities at all times. (*Id.* ¶ 14.) Together, the clearinghouse deposits and the net capital requirements require Robinhood, and indeed all broker-dealers, to carefully monitor its cash position. This can be particularly challenging for any broker-dealer during periods of extreme volatility. But the purpose of these requirements is simple—to protect investors and the financial markets. (*Id.* ¶ 15.)

In late January through early February 2021, the financial markets experienced extreme levels of volatility and unprecedented trading volume in a concentrated number of

securities. During this period, Robinhood observed that a number of specific securities were subject to particularly rapid price fluctuations, including GameStop Corp. ("GME") and AMC Entertainment Holdings Inc. ("AMC").[1] In response to the volatility, RHS made the independent decision to limit customer purchases for certain stocks from January 28 through February 4, 2021, which was implemented by RHF.[2] (*Id.* ¶¶ 27-28.) RHS made its decision to remain in compliance with regulatory clearinghouse deposit requirements, which skyrocketed as a result of the volatility. (*Id.*) The discretion Robinhood exercised in implementing the restrictions was consistent with the terms of its Customer Agreement, current federal regulations and the SEC's issued guidance.

Plaintiffs began filing the Short Squeeze Actions within hours of Robinhood's January 28, 2021 decision to temporarily limit customer purchases of certain securities. (*See* Appendix A, "Short Squeeze Actions.") At the time of this filing, a total of 49 actions are now pending: the 41 actions originally identified by the *Cheng* Plaintiffs plus eight more, identified as tag-along actions.[3] Almost all of these actions (47 out of 49) are class actions. Robinhood is named as a defendant in 46 of the 49 pending actions, and is the *only* defendant in 29 of those 46 actions.

---

[1] Other securities at issue for Robinhood include American Airlines Group Inc. (AAL), Bed Bath & Beyond Inc. ("BBBY"), Blackberry Ltd. ("BB"), Castor Maritime, Inc. (CTRM), Express, Inc., ("EXPR"), Koss Corporation ("KOSS"), Naked Brand Group Ltd. ("NAKD"), Nokia Corp. ("NOK"), Sundial Growers, Inc. ("SNDL"), Tootsie Roll Industries, Inc. ("TR") and Trivago, N.V. ("TRVG").

[2] Robinhood understands from public statements made by other broker-dealers and media reports that other broker-dealers imposed their own customer purchasing restrictions.

[3] In addition to the actions identified by the *Cheng* Plaintiffs, other parties identified three tag-along actions prior to this submission. (ECF Nos. 8 and 66.) Robinhood further identifies five tag-along actions in its Notice of Potential Tag-Along Actions being filed contemporaneously herewith. There are two additional state court actions that Robinhood intends to remove to federal court and will identify as tag-along actions.

In February, one plaintiff filed a pre-answer request for a temporary restraining order, which a federal court denied—primarily on the ground that the plaintiff's securities and consumer protection claims were unlikely to succeed on the merits. *See* Order Denying TRO Application, *Cobos v. Robinhood Financial LLC, et al.*, No. 21-cv-00843 (C.D. Cal. Feb. 10, 2021) (ECF No. 30). The remainder of the Short Squeeze Actions have not procedurally advanced beyond the filing of complaints.

## DISCUSSION

### I. THE SHORT SQUEEZE ACTIONS SHOULD BE CENTRALIZED.

Centralization is appropriate where it will maximize "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Panel has previously centralized cases where they will "focus on a significant number of common events, defendants, and/or witnesses," *In re UnumProvident Corp.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003), so that the parties can avoid duplicative discovery as well as the potential for inconsistent deadlines and rulings, *see In re Camp Lejeune, N.C. Water Contamination Litig.*, 763 F. Supp. 2d 1381, 1381-82 (J.P.M.L. 2011) (centralizing four actions to preclude duplicative discovery). The standard for centralization is satisfied here.

As an initial matter, centralizing the cases at this early stage of the litigation will enable the transferee court to enter a case management plan that achieves a "just and efficient" resolution of the actions. 28 U.S.C. § 1407(a). This is true even where, as here, Plaintiffs allege two distinct sets of claims. The transferee court can "employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks for [different defendants] and/or separate tracks for the different types of actions involved"—to efficiently manage a litigation. *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004); *see also In re Yamaha Motor Corp. Rhino ATV Prod. Liab. Litig.*, 597 F. Supp. 2d 1377,

5

1378 (J.P.M.L. 2009) ("Transferee judges have demonstrated the ability to accommodate common and individual discovery tracks, gaining the benefits of centralization without delaying or compromising consideration of claims on their individual merits.").

The securities, common law and consumer protection claims likely will involve common pretrial motions (including motions to dismiss) and similar discovery demands. The majority of these cases—29 of the 49 total actions—involve only the Robinhood entities as defendants and seek relief only on behalf of Robinhood customers. By contrast, the remaining actions include unfounded (and implausible) allegations of an industry-wide conspiracy, naming as many as 46 defendants and seeking relief on the customers of at least 18 different broker-dealers. These antitrust claims are significantly broader in scope and different in kind as compared to the Robinhood-only cases. The antitrust claims will therefore likely require pretrial briefing on fundamentally different issues and, if they proceed past such motions, will present substantially different expert and class certification issues. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 58-59 (2007) (discussing the burdensome nature of discovery in antitrust cases). Nevertheless, because the different types of claims concern common factual issues, centralization is still the appropriate procedural mechanism by which to proceed. *See In re Civil Actions Air Crash Disaster at Greater Cincinnati Airport*, 295 F. Supp. 51, 51 (J.P.M.L. 1968) (centralizing actions into one MDL that may "present substantially different legal issues [because] many of the fact questions are common to all cases").

Further, "a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring . . . related actions to a single district," *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970) (transferring four potentially conflicting class actions), and proceeding without centralization may result in the "pretrial chaos in conflicting

class action determinations" that Section 1407 was "designed" to avoid, *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968).  Here, 47 of the 49 Short Squeeze Actions seek certification of the same or similar putative classes.  (*See* Appendix B, "Proposed Class Definitions.")

Finally, consistent with the Panel's instruction, Robinhood has assessed "alternatives to centralization" (ECF No. 4) and has concluded that centralization is the only feasible path forward.  Given the diversity of federal districts in which these 49 actions were filed, and the different speeds at which actions tend to proceed in different districts, it is unlikely that pretrial motions, including any potential motions to dismiss and/or discovery motions, could be resolved within the same time frame.  Informal coordination of discovery among the jurisdictions would be nearly impossible.

Individual transfer motions pursuant to 28 U.S.C. § 1404 also are not a feasible option.  The numerous federal district and magistrate judges currently presiding over the 46 actions in which Robinhood is a defendant have "discretion to adjudicate motions to transfer according to individualized case-by-case consideration of convenience and fairness."  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citations omitted).  In addition to the burden of filing dozens of individual transfer motions, it is far from certain that Robinhood would succeed in transferring to a single venue the large number of actions currently pending.  *See In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380-81 (J.P.M.L. 2013) (finding there was "not a sufficiently reasonable prospect" that Section 1404 could be relied upon to centralize four actions and one potential tag-along action).  Centralization pursuant to 28 U.S.C. § 1407 presents the most efficient and least burdensome option.

## II. APPROPRIATE VENUES FOR CENTRALIZATION.

Robinhood agrees that the Northern District of California is an appropriate venue for centralization: both RHM and RHF are located within the Northern District of California, and potentially relevant witnesses and documents are therefore located in the district. *See In re Wells Fargo Auto Ins. Mktg. & Sales Practices Litig.*, 273 F. Supp. 3d 1383, 1384 (J.P.M.L. 2017) (ordering centralization where "the key entities and individuals with direct responsibility for the alleged conduct in this litigation are located . . . [and] therefore [the location of the] relevant documents and witnesses"). Other defendants also maintain their principal places of business in the Northern District of California.[4]

Robinhood does note for the Panel's consideration that the Northern District of California currently has the most pending MDLs (18 MDLs, tied with another district).[5] By contrast, the Middle District of Florida, in which there are five pending actions subject to this petition and where RHS is registered, has only two pending MDLs. *See In re Digitek Prod. Liab. Litig.*, 571 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) ("With the increasing number of MDLs, it becomes helpful to spread the burden of them among districts, where we can do so and still retain the benefits of convenience which Section 1407 centralization requires."). As noted above (*see* Background, *supra* page 4), Robinhood's decision to limit customer purchases for certain stocks from January 28 to February 4, 2021 was made by RHS employees located in

---

[4] Other defendants in the Short Squeeze Actions maintain their principal places of business in the Northern District of California, including Alpaca Securities LLC, Square Inc. and Sequoia Capital Operations LLC.

[5] *See* Multidistrict Litigation, MDL Statistics Report - Distribution of Pending MDL Dockets by District (1/19/21), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-15-2021.pdf.

Lake Mary.  (Swartwout Decl. ¶¶ 25-28.)  The Middle District of Florida would therefore also be an appropriate venue for centralization.

## CONCLUSION

For the foregoing reasons, Robinhood respectfully requests that the Panel centralize the Short Squeeze Actions before a single court for coordinated or consolidated pretrial proceedings.

Dated: March 1, 2021

Respectfully Submitted,

CRAVATH, SWAINE & MOORE LLP

By: /s/ Kevin J. Orsini
Kevin J. Orsini
New York Bar No. 4261806
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel:   (212) 474-1000
Fax:   (212) 474-3700
korsini@cravath.com

*Attorneys for Defendants Robinhood Financial LLC, Robinhood Securities, LLC and Robinhood Markets, Inc.*