**BEFORE THE UNITED STATES JUDICIAL**
**PANEL ON MULTIDISTRICT LITIGATION**


In re JANUARY 2021 SHORT      .  MDL NO. 2989
SQUEEZE TRADING LITIGATION    .  Thursday, March 25, 2021
. . . . . . . . . . . . . . . .  12:05 p.m.


**TRANSCRIPT OF ORAL ARGUMENT**
**VIA VIDEO TELECONFERENCE**


BEFORE:              HONORABLE KAREN K. CALDWELL, CHAIR
                     Eastern District of Kentucky

                     HONORABLE NATHANIEL M. GORTON
                     District of Massachusetts

                     HONORABLE MATTHEW F. KENNELLY
                     Northern District of Illinois

                     HONORABLE DAVID C. NORTON
                     District of South Carolina

                     HONORABLE ROGER T. BENITEZ
                     Southern District of California

                     HONORABLE DALE A. KIMBALL (Recused)
                     District of Utah


APPEARANCES:

For Plaintiffs:          JOSEPH R. SAVERI, ESQ.
                         Joseph Saveri Law Firm
                         601 California Street
                         Suite 1000
                         San Francisco, CA 94108
                         (415) 500-6800

                         GABRIEL A. ASSAAD, ESQ.
                         McDonald Worley, P.C.
                         1770 St. James Place
                         Suite 100
                         Houston, TX 77056
                         (281) 623-1906

```
For Plaintiffs:          SEAN A. BURSTYN, ESQ.
                         The Ferraro Law Firm, P.A.
                         600 Brickell Avenue
                         38th Floor
                         Miami, FL 33131
                         (305) 375-0111

                         FRANK R. SCHIRRIPA, ESQ.
                         Hach Rose Schirripa & Cheverie LLP
                         112 Madison Avenue
                         New York, NY 10016
                         (212) 213-8311

                         MAURICE D. PESSAH, ESQ.
                         Pessah Law Group, P.C.
                         661 N. Harper Avenue
                         Suite 208
                         West Hollywood, CA 90048
                         (310) 772-22611

                         JANET R. VARNELL, ESQ.
                         Varnell & Warwick, P.A.
                         1101 E. Cumberland Avenue
                         Suite 201H-105
                         Tampa, FL 33602
                         (352) 753-8600

                         PHILLIP KIM, ESQ.
                         The Rosen Law Firm, P.A.
                         275 Madison Avenue
                         New York, NY 10016
                         (212) 686-1060

For Defendants:          KEVIN J. ORSINI, ESQ.
                         Cravath, Swaine & Moore LLP
                         825 Eighth Avenue
                         New York, NY 10019
                         (212) 474-1000

                         JASON J. MENDRO, ESQ.
                         Gibson, Dunn & Crutcher LLP
                         1050 Connecticut Avenue NW
                         Washington, DC 20036
                         (202) 955-8500

                         J. MARK GIDLEY, ESQ.
                         White & Case LLP
                         701 13th Street NW
                         Washington, DC 20005
                         (202) 626-3600
```

**Court Reporter:**          **Bryan A. Wayne, RPR, CRR**
                            **U.S. Courthouse, Room 4704-A**
                            **333 Constitution Avenue NW**
                            **Washington, DC 20001**
                            **(202) 354-3186**
                            **Bryan_Wayne@dcd.uscourts.gov**

**Proceedings reported by stenotype shorthand.**
**Transcript produced by computer-aided transcription.**

1                           P R O C E E D I N G S

2              JUDGE CALDWELL:  The Court will now turn to MDL

3     No. 2989, the Short Squeeze Trading Litigation.  Mr. Saveri.

4              MR. SAVERI:  Good morning.  Can you hear me?

5              THE COURT:  We can.

6              MR. SAVERI:  I would like to reserve one minute,

7     if that's possible.

8              THE COURT:  You may.

9              MR. SAVERI:  Thank you, Your Honors.

10        This is Joseph Saveri from the Joseph Saveri Law Firm in

11    San Francisco.  We are the party that moved for consolidation

12    and transfer and initiated these proceedings, and we support

13    transfer to the Northern District of California.

14        If one looks at the petitions as a whole, there is

15    substantial agreement.  There are some outlier positions, but

16    on key issues there's a significant consensus; that is that

17    there is a consensus on centralization because the claims here

18    all arise from the same event, namely, the limitations on

19    trading that occurred on or about January 29th of this year.

20        And all parties agree that those are the core facts and

21    that, as a result, all of the discovery in this case is going

22    to be mostly in common.  In particular, this is a complex case

23    involving securities trading.  There's going to be substantial

24    ESI discovery regarding the trading practices and trading

25    routing, and those will benefit from a management by one judge.

1          In the Northern District of California, Judge Gilliam has

2     been assigned a low number of case.  He's a very experienced

3     jurist, having served as a U.S. attorney prosecuting security

4     fraud cases.

5               JUDGE CALDWELL:  Your time is up.  I'll entertain

6     questions from the Panel.  Judge Kennelly.

7               JUDGE KENNELLY:  If we centralize and don't send

8     it to Northern California, do you have a second choice?

9               MR. SAVERI:  Of the jurisdictions that are in play?

10    Probably Florida.  But, Your Honor, I guess I would push back

11    and say that, clearly, given the parties, where they're located,

12    the principal places of business, that the Northern District of

13    California is the strongest jurisdiction.

14              JUDGE KENNELLY:  All right.  Thanks.

15    You've answered my question.

16              JUDGE CALDWELL:  Anyone else?

17         Thank you, Mr. Saveri.  We'll here from you in rebuttal.

18              MR. SAVERI:  Thank you.

19              JUDGE CALDWELL:  We'll now recognize Gabriel Assaad.

20    You may make your appearance.

21              MR. ASSAAD:  Good afternoon.  Gabriel Assaad.  I

22    represent Ryan Ross and others against numerous entities --

23              JUDGE CALDWELL:  Mr. Assaad, you might move a little

24    closer to your microphone.

25              MR. ASSAAD:  Is that better?

1    THE COURT:  It is.

2    MR. ASSAAD:  Okay.  I represent Mr. Ross and

3  others against numerous entities, a case filed in the Southern

4  District of Texas.  We support centralization, but we support

5  for centralization in the District of Columbia.

6    I've attended many of these hearings, and I think the

7  issue here is location, not whether or not this case should

8  be centralized.  And unlike many other cases, there's really

9  no focal point in this case.  We have numerous defendants,

10  from the East Coast to the West Coast, from Texas up to the

11  Central area.  The question is where is the best place for the

12  convenience of the parties and where there's a court that's

13  not overly burdened with MDLs, such as the Northern District

14  of California, where this case should be.

15    And another issue is, let's just spread the wealth.

16  The Northern District of California has 19 MDLs, and I support

17  the District of Columbia, basically, for convenience factors.

18  There's multiple flights to the District of Columbia.  Many of

19  these law firms representing the defendants have offices in

20  New York or D.C.  It's convenient to them.  Flights to Dulles

21  are very convenient.

22    Unlike the Central District of Florida or the Southern

23  District of Florida, getting there, there might be one or two

24  flights a day from other places around the country, where that's

25  not going to be the problem with the District of Columbia.

1      With respect to the other arguments that people that oppose

2   consolidation, whether or not they have a claim that hasn't been

3   filed by the other parties, or that I guess one was a little of

4   a trade secret issue, I'm quite confident that any claim that

5   has been brought by any party to the master complaint wants this

6   case consolidated.  So any outlier claims that have not been

7   raised by certain plaintiffs would probably be raised in the

8   master complaint.

9      And with respect to trade secrets among the defendants,

10   the [indiscernible] plaintiffs as that as a reason, defendants

11   are not objecting.  All the defendants support consolidation.

12   Unless there's any questions, I'll just rest on my papers.

13          THE COURT:  Very well.  Questions for counsel?

14      Hearing none, we'll turn to the next argument, Counsel

15   Sean Burstyn.

16          MR. BURSTYN:  Good morning, Judge Caldwell, Your

17   Honors.  May it please the Court, my name is Sean Burstyn of

18   the Burstyn Law Firm, and together with the Ferraro Law Firm

19   and Jeffrey Kwatinetz, I represent the Juncadella plaintiffs,

20   who support centralization and argue for transfer to the

21   Southern District of Florida.  May I begin our argument?

22          JUDGE CALDWELL:  You may.

23          MR. BURSTYN:  Thank you.  The Juncadella plaintiffs

24   support transfer to the Southern District of Florida for two

25   reasons:  First, the data.  Compared to the Northern District

of California, the Southern District of Florida is half as
busy and more than twice as fast.  I'll focus on the Northern
District of California and the Middle District of Florida,
whose proponents emphasize caseload and median time for case
disposition, but the Southern District of Florida fares better
under both metrics.

The Northern District of California has roughly 12,000
total cases compared to only 6,000 cases in the Southern
District of Florida, and the Southern District of Florida is
ranked number one in the country by median case disposition time.

Additionally, the Northern District of California is tied
for the most MDLs in the country, and, as with Perri in the
Middle District of Florida, every judge with a related action
in the Northern District of California already has an MDL.  By
contrast, the Juncadella action is assigned to Judge Altonaga,
who has MDL experience but no current MDL assignment.  Finally,
Florida's Middle District has thousands more cases than the
Southern District.

Our second point is that, although one defendant is
headquartered in the Middle District of Florida, the Southern
District is more accessible on balance for all stakeholders,
given its hundreds more daily flights and negligibly greater
flight time.

In *In re Clearview AI*, this Panel ordered centralization
partly to conserve the resources of the parties and their

1    counsel.  Florida's the one and only state with support from

2    all of the presenting defendants and the presenting plaintiff.

3    We acknowledge that the presenting defendants support the Middle

4    District; however, to the extent some of the parties support

5    litigating in Florida, including the movants, as a plan b,

6    it's our position that all of the parties and counsel in this

7    nationwide class action would be best served in Florida's

8    fastest, least utilized, and most accessible district.

9         With that, I'm available to the Panel for any questions.

10              JUDGE CALDWELL:  Questions?

11        Hearing none, we have your argument, Mr. Burstyn.

12              MR. BURSTYN:  Thank you, Your Honors.

13              THE COURT:  The Panel will now hear from Frank

14   Schirripa.

15              MR. SCHIRRIPA:  Thank you.  Good afternoon, Judge

16   Caldwell and members of the Panel.  I represent the Dechirico

17   plaintiffs, who support centralization and transfer of this

18   action into the Eastern District of New York.

19        As I've argued in my papers, this is a Wall Street-

20   related case.  The center of gravity here is based in New York.

21   The majority of the defendants are either headquartered or have

22   principal places of business in New York or in the surrounding

23   areas, whether it's Greenwich, Connecticut or New Jersey.  There

24   are four defendants that are located in Europe.  It would be

25   significantly easier to travel from Europe to New York than to

1    the Northern District of California.

2         And with respect to the Eastern District of New York, it

3    has only five current MDLs.  Of the current MDLs, four of which

4    predate 2012, two are currently on appeal.  The *Restasis* case,

5    the most recent MDL to be placed in the Eastern District of

6    New York, was placed there in 2018, and it's currently in class-

7    certification notice stage.

8         By contrast, the Northern District, as has been argued

9    by my colleagues from the other firms, has 19 MDLs, possibly

10   gaining another one today.  And Judge Gilliam, who currently

11   has the low-number case in the Northern District in this matter,

12   he's currently presiding over the *StubHub* refund MDL.

13        So I think it would be best, as a lifelong New Yorker,

14   to bring some travel and business back to New York, where the

15   hotels and restaurants could use the business, and certainly it

16   would be a great place to host this case.

17        Thank you for your time this afternoon and this morning.

18   All the best.  Stay healthy.

19              JUDGE CALDWELL:  Questions for counsel?

20        Hearing none, we'll turn to the next argument.

21        Mr. Pessah.

22              MR. PESSAH:  Yes.  Good afternoon Your Honors,

23   and may it please the Court.  Maurice Pessah for plaintiffs

24   in the putative class in Gossett, et al., versus Robinhood

25   Financial, LLC, et al.

1    Your Honors, we support centralization of the Robinhood

2    actions, as defined in our brief, in the Northern District of

3    California.  We take exception, however, with moving party's

4    sweeping proposal which we believe would be inimicable to the

5    interest of the plaintiffs suing the Robinhood entities and

6    contrary to the principles of consolidation.

7    Our position entails consolidation of 37 out of

8    approximately 54 Short Squeeze actions.  The other 17 should

9    not be consolidated.  Since the conclusion of briefing, ten

10   additional Short Squeeze actions have been filed.  Out of the

11   ten, eight fall within our definition of Robinhood actions.

12   There are two points we wish to emphasize, Your Honors.

13   First, the 54 Short Squeeze actions do not present common

14   questions of fact.  Apart from 37 Robinhood actions that we see

15   fit for consolidation, there are 17 other actions that are not.

16   The other actions collectively name 35 defendants,

17   including 29 broker and broker-affiliated parties, who each

18   took separate actions with respect to the subject securities,

19   made different representations to their clients, and have

20   distinct user agreements with differing choice of law clauses.

21   Second, this Panel has refused consolidation in actions

22   involving defendants who are direct competitors when trade

23   secrets and other sensitive information are subject to discovery

24   amongst them.  Here, adopting moving party's position forces a

25   panoply of 29 broker and broker-affiliated entities to pull back

1    the curtain on their internal operations before their

2    competitors, thereby complicating and significantly impacting

3    the discovery process.

4         In sum, Your Honors, consolidation of all 54 Short Squeeze

5    cases would not promote the just and efficient conduct of such

6    actions and would overburden the parties in the Robinhood

7    actions, which constitute the plurality of cases before this

8    Panel.

9         THE COURT:  Thank you.  Questions from the Panel?

10        Hearing none, we thank you for your argument.

11        MR. PESSAH:  Thank you, Your Honors.

12        The Panel will now hear from Janet Varnell.

13        MS. VARNELL:  Good afternoon, Judge and Panel.

14    I'm Janet Varnell of Varnell & Warwick in Central Florida.

15    I'm speaking to you today on behalf of four cases: Jonathan

16    Diamond, Steven Baird, Taylor Perri, Ryan Heitz, Kevin Sheehan,

17    and Michael Scalia against the Robinhood entities.

18        These are four Florida cases that have filed a joint

19    opposition to the motion for transfer and centralization because

20    it would be inconvenient to the parties, the witnesses, and

21    because centralization will not promote the just and efficient

22    conduct of the pending actions.  May I begin my argument?

23        JUDGE CALDWELL:  You may.

24        MS. VARNELL:  In late January, a young millennial

25    lawyer in my law firm woke me up in a very excited and outraged

1    state, having stayed up all night drafting a complaint.

2    It was for his own client, not mine, also a millennial.

3    The youth, energy, and innovation of this young lawyer is

4    relevant to your decision today, and here's why:

5        The potential for convenience, efficiencies, and fairness

6    in pretrial proceedings are not served by allowing the Short

7    Squeeze-focused litigation that's being orchestrated by the

8    repeat players that appear before you today to swallow this

9    innovative Florida state law marketing-focused case that the

10   opponents of this motion present to you.

11       The briefing opposing the consolidation of the Florida

12   marketing cases lays out all of the standard considerations

13   that are, I believe, unnecessary to repeat to this very

14   knowledgeable Panel.  But what that briefing does not reveal

15   to you is something amazing that happened in Florida.

16       You see, this phenomenon of young, diverse lawyers didn't

17   just happen in my firm.  It happened within several firms.  This

18   organic, rapid, self-organizing collaboration of young lawyers,

19   none of whom have ever appeared before this Panel before, all

20   worked together efficiently, analyzed the facts and the claims

21   of their lawsuits, compared them with the markedly different

22   lawsuits that were filed elsewhere, and they made an effective

23   plan to get results from for their clients in the classes.

24       Although they did attempt to reach out to the proponents

25   of this motion, what has become typical of the repeat players

1    in MDL litigation, none of those repeat players gave them the

2    time of day.  So I'm here today, as a 25-year, class-action

3    lawyer, asking this Panel, on behalf of these young millennial

4    lawyers who have put together in the Florida cases, to give

5    these young lawyers a shot.  The facts and claims in their draft

6    consolidated complaint are markedly different than the Short --

7              JUDGE CALDWELL:  Your time is up, Ms. Varnell.

8              MS. VARNELL:  Thank you.

9              JUDGE CALDWELL:  Questions from the Panel?

10       Thank you very much for your argument.  The Panel will

11   recognize Phillip Kim.

12             MR. KIM:  Good afternoon, Your Honors.  Phillip Kim,

13   Rosen Law Firm, for plaintiff Damon Muncy in the District of New

14   Jersey case.  I will be opposing inclusion of the Muncy case to

15   the MDL.  We take no position on centralization as to the other

16   cases.  May I start, Your Honors?

17             JUDGE CALDWELL:  You may.

18             MR. KIM:  Thank you.  So the Muncy action is the only

19   pure Exchange Act case that has been filed.  It's the only case

20   that complied with the PSLRA, which is the Private Securities

21   Litigation Reform Act.  It's the only case where we issued an

22   early notice where investors had been advised that if they seek

23   to be lead plaintiff, they must move this court, the District

24   of New Jersey, for appointment as the lead plaintiff.

25       These are important facts because, unlike these other

1    cases, the PSRA creates procedural hurdles and requirements

2    that the other cases will not face.  There will be a discovery

3    stay in the case until motion to dismiss is decided.  So to the

4    extent that there could be -- if this case was centralized with

5    the other cases, to the extent of the efficiencies, there

6    wouldn't be.  They'd be on separate tracks.

7         And given the leadership requirements of lead plaintiff

8    and lead counsel, there will be separate leaders between the

9    Exchange Act claims and these other cases because we represent

10   a different class, and potentially there would be conflicts

11   because we're seeking compensation from the same parties

12   representing different classes.

13        So the efficiencies there between the leadership of the

14   securities class action and also in these other cases, the

15   efficiencies just won't be there.  It would be easier for the

16   securities cases to informally coordinate, ultimately, with the

17   leaders in these other cases, but it would be on a different

18   timeline given the discovery stay.

19        So any benefit in coordinating discovery and pretrial

20   schedules are less -- the centralized cases go on the slower

21   schedule than in the PSRA cases, there would not be much

22   efficiency there.  Unless the Panel has any other questions,

23   I'll just stand down.

24             JUDGE CALDWELL:  Yes.  Judge Kennelly.

25             JUDGE KENNELLY:  So I get that, under the PSRA,

1    discovery would be stayed until a motion to dismiss gets

2    ruled on, but once that happened, assuming it gets denied,

3    the factual background is the same on all these cases, right?

4    It's going to be the same evidence and the same discovery,

5    maybe not a hundred percent identical, but largely overlapping.

6    Am I not right about that?

7            MR. KIM:  Perhaps.  Our case is narrower than

8    these other cases, so there will be some overlap.  I think

9    the difference, is I think there was some other counsel that

10   was talking about a master complaint, you know, where various

11   people could assert their claims.

12       They'll have the benefit of discovery.  We won't.

13   So, certainly, it would have to move on different tracks.

14   And I think, to the extent that any of their claims would sound

15   in a securities fraud claim, such as a misstatement or omission

16   in connection with a person or security or manipulation under

17   the Exchange Act, those claims would be preempted by the

18   Exchange Act claims.

19       And, you know, we've issued an early notice.  If the PSRA

20   process plays out, anyone who has a securities claim, who's

21   interested in bringing a claim, should go before Judge Cecchi,

22   make their motion by April 5, and that lead plaintiff and lead

23   counsel will control all the securities claim.

24           JUDGE KENNELLY:  All right.  Thank you.

25           MR. KIM:  Thank you.

1          JUDGE CALDWELL:  Judge Gorton.

2          JUDGE GORTON:  Mr. Kim, yours is certainly not the

3    only case in this group of cases asserting claims under the

4    Securities Exchange Act.  Right?  I mean there's a case in

5    California, and there's a case in the Northern District of

6    Illinois, Lagmanson, that are also claims under the Exchange

7    Act, so that if we exclude yours, we're going to have to

8    exclude theirs.  Right?

9          MR. KIM:  Well, not necessarily, Your Honor, because

10   we've complied with the PSLRA.  So to the extent that those

11   folks want to bring a securities claim, they'll have to make a

12   motion before the Court in District of New Jersey to throw their

13   hat in the ring.  And if they have the client with the largest

14   financial interest, their client will be appointed lead

15   plaintiff, and they'll be appointed lead counsel.  Everyone else

16   will just fall to the wayside.  There'll be absent class members

17   and absent counsel like in any other securities case.

18       So following the appointment of lead plaintiff and lead

19   counsel, there will be one voice for all the Exchange Act

20   claims, and the way the statute works is, if anyone else were

21   to file a subsequent claim, those claims are covered because,

22   you know, the appointment of lead plaintiff and lead counsel is

23   almost as a quasi-class certification.

24          JUDGE CALDWELL:  Other questions?

25       Thank you, Mr. Kim.  We have your argument.

1          MR. KIM:   Thank you.

2          JUDGE CALDWELL:   The Panel will recognize

3     Kevin Orsini.

4          MR. ORSINI:   Good afternoon, Judge Caldwell.

5     Good afternoon, Your Honors.   Kevin Orsini of Cravath, Swaine

6     & Moore on behalf of three Robinhood defendants.   We support

7     centralization, and as we set forth in our papers, we believe

8     centralization could be most appropriate in either Northern

9     District of California or Middle District of Florida.

10         I will be brief.   My clients have the distinction of

11    being the largest commonality across all of the actions here.

12    There are 53 actions that are before this Panel, either in the

13    original motion or as tagalongs.   We are defendants in 49 of

14    those, and, in fact, in 31 of those actions we are the sole

15    defendant.

16         There, I believe, is no question that centralization

17    generally is appropriate here.   There's overwhelming support

18    for it.   We're in 19 different judicial districts.   It just

19    makes sense.

20         I will quickly address the arguments of Mr. Pessah,

21    Ms. Varnell, and Mr. Kim, which are really the outliers here.

22         Mr. Pessah argues that we ought to keep the Robinhood-

23    only claims separate from the antitrust claims that allege a

24    conspiracy market-wide with a variety of defendants.   As we

25    acknowledge in our papers, there are some differences between

1   those broad conspiracy claims and the Robinhood-only

2   claims, but there's also significant commonality.

3        At its core, in both of those sets of cases are the

4   actions of my client as well as other members of the industry

5   during a couple-a-day period in response to a common stimulus.

6   The underlying facts, the discovery, will be overwhelmingly the

7   same, and we believe that any transferee court can obviously

8   deal with the differences that may exist between the different

9   groups of cases and all of the innovative ways that this Panel

10  has talked about in earlier proceedings.

11       With respect to Ms. Varnell, the primary argument that

12  they've set forth for the Florida cases is that they had a draft

13  consolidated complaint that they want to pursue in Florida state

14  court, potentially.  That may happen at some point.  To the

15  extent it's not removed or removable, it will stay there; this

16  Panel will not have something to say about that.

17       But we have to deal with what's in front of us, and what's

18  in front of us are a series of federal actions that involve the

19  same core facts as the other ones that are before this Panel

20  that, again, ought to be centralized.  I'll stop there.

21            JUDGE CALDWELL:  Very well.  Questions from the Panel.

22            JUDGE BENITEZ:  I have a question.  Since you didn't

23  get a chance to address Mr. Kim's comments, why don't you do

24  that very briefly for me, would you?

25            MR. ORSINI:  I will, Your Honor.  Thank you for the

opportunity.  So I think the question that Judge Gorton asked --
I believe it was Judge Gorton -- is the point I would make,
which is their claim is not as unique as they would set forth.

There are at least five other claims that include Exchange
Act causes of action.  Another one was filed as we've been
sitting here around this Panel.  There may be more coming.
The argument about perfection of the PSLRA I think, respectfully,
is wrong.  The others haven't failed to perfect.  There are
procedures that are in place and requirements when you have
multiple dueling Exchange Act cases that counsel doesn't take
into account.

But the reality is, we have multiple Exchange Act claims.
They all arise from the common core nucleus facts.  They ought
to go to one judge with all the other cases so we can get the
efficiencies to those, and they can be put on a different track,
if necessary, given procedural peculiarities of PSLRA cases.

JUDGE BENITEZ:  Thank you.

JUDGE CALDWELL:  Further questions?  Hearing none,
we'll turn to the next argument.  Jason Mendro.

MR. MENDRO:  Good afternoon, members of the Panel,
and may it please the Court.  My name is Jason Mendro from the
law firm of Gibson, Dunn & Crutcher.  I'm here today on behalf
of the Charles Schwab defendants and the Ameritrade defendants.
We respectfully submit that these cases should be centralized
and transferred to the Middle District of Florida.

If this were a decision that turned entirely on the number
of filings, then the Northern District of California would be an
understandable choice.  There are more cases filed there than
anywhere else.  But if the Panel considers docket load and any
other relevant factors, the Middle District of Florida clearly
is the most appropriate forum.  I'll focus briefly on three
reasons why.

First, the Middle District of Florida has the strongest
factual connection to the claims.  Contrary to what many of the
plaintiffs may have assumed when they filed suit, we now know
that Robinhood's decisions that go to the heart of these cases
were made in Lake Mary, Florida, which is in the Middle District.
Robinhood's relevant brokerage firm is based there too.

Several plaintiffs seemed to have assumed that Charles
Schwab is based in San Francisco, but it isn't.  Charles Schwab
Corporation is now located in Westlake, Texas, in the
Dallas/Fort Worth area, and it has been at all relevant times.
So neither the location of the defendants nor the location of
the relevant events here warrants transfer to California.

Second, the Middle District of Florida can handle this
matter efficiently.  It has a modest caseload, just two MDLs,
and a swift disposition rate of about 6.2 months.

In contrast, the Northern District of Florida is highly
congested and has 19 MDLs, more than any other district in the
country, and it's median disposition rate is more than five

1    months longer than in the Middle District of Florida.

2         Finally, there's broad support among the parties for the

3    Middle District of Florida.  Every one of the defendants who

4    made submissions to the Panel acknowledged that it would be an

5    appropriate forum.  Many of the plaintiffs admit this too.  Five

6    cases were filed in the Middle District of Florida.  Although

7    those plaintiffs oppose consolidation, they argue that their

8    cases should remain there.  And as we've just heard from

9    Mr. Saveri, even the Chang plaintiffs recognize that Florida

10   would be the second-best choice.

11        So, in sum, based on the number of filings, the Middle

12   District of Florida certainly should be among the top forums

13   considered; and based on every other factor, it is clearly the

14   most appropriate forum.  I see that my time is just about out,

15   but I would welcome the opportunity to respond to any questions

16   from the Panel.

17             JUDGE CALDWELL:  Thank you, Mr. Mendro.

18        Questions from the Panel?

19        Hearing none, we'll turn to the argument of Mark Gidley.

20        Mr. Gidley.

21             MR. GIDLEY:  Yes.  Thank you very much.  I am

22   J. Mark Gidley of White & Case for Apex Clearing Corporation.

23   We support consolidation of all cases and a transfer to the

24   Southern District of Texas, my home town of Houston, or the

25   Middle District of Florida.

1    Let me begin by saying, first, as you know, antitrust is

2    a national issue.  It may be having its national moment right

3    now in 2021.  The Supreme Court wrote in *Mitsubishi* that the

4    Sherman Act is designed to promote the national interest in a

5    competitive economy.  The idea that 19 MDLs pinned now in the

6    Northern District of California, with about a third to half

7    being antitrust MDLs, risks the Northern District becoming a

8    specialist court.

9        We think, second, diversity of judicial thought is very

10   important.  It's a strong positive for the growth of antitrust

11   law and, indeed, securities law for more courts to be heard

12   from.

13       Third, the parties are all over the country.  We included a

14   map in our papers, Your Honor.  That map showed that two-thirds

15   of the plaintiffs are resident outside of the entire West Coast;

16   that is, there are two-thirds that are in the East.  And

17   updating the figures from the latest complaints, 69 plaintiffs

18   are in the East, 35 in the West, for the total parties including

19   defendants, the latest figures are 102 are in the East and only

20   50 are in the West.

21       The Northern District is more congested.  But by contrast,

22   the Southern District of Texas, home to the fourth largest city

23   in the United States, Houston, last received a transfer from

24   this Panel in 2010.  In the 350 cases the Panel has heard since

25   then, none have been transferred to the Southern District of

1    Texas.  Charles Schwab is headquartered in Texas, as is Apex.

2         And we also think that one of the changes that may have

3    occurred that the Court should factor in is the change in the

4    way the courts have looked at these cases.  The Supreme Court,

5    in *Bristol-Myers Squibb* and *Daimler,* have taught that the home

6    location of the defendant is important for due process.

7         In an MDL, we can't satisfy all the defendants, and we have

8    scores of defendants, but it's clear that the largest defendant

9    is in Florida.  So if not the Southern District of Texas, then

10   we would urge Middle District of Florida.  Thank you.

11        JUDGE CALDWELL:  Thank you.

12   Questions for Mr. Gidley.

13   Thank you, Mr. Gidley.  We have your argument.

14   Mr. Saveri, you have reserved a minute for rebuttal.

15        MR. SAVERI:  Thank you, Your Honor.  A couple quick

16   points.  First, my team is certainly populated by millennials,

17   and they've been certainly active in this case since the

18   beginning.  My firm is relatively recent, but you can just

19   look at us and know that we are diverse and we're providing

20   active opportunities for younger lawyers.

21        Look, one of the issues that's come up is the congestion

22   of the Northern District of California, and let me try to

23   address that directly.  The forum may have a lot of cases, but

24   the low-number judge, Judge Gilliam, has one other case which

25   is probably not going to be a substantial burden because of a

1    motion to compel arbitration.  If there weren't that history,

2    I think the Northern District of California would be a clear

3    choice because of its connection to the case and the location

4    of the defendants.  We have a jurist here who is well suited

5    to handle the case, and I'd recommend the Panel send it to him.

6         JUDGE CALDWELL:  Any questions for Mr. Saveri?

7         Thank you very much.  We have your argument.

8         That concludes the docket of oral argument before the

9    JPML here today.

10        Judges, if you will check your email shortly, we will give

11   you instructions regarding when we will reconvene.

12        Thank you, everyone.  That concludes this hearing.

13         (Proceedings adjourned at 12:36 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter. *


/s/ Bryan A. Wayne
Bryan A. Wayne


* PLEASE NOTE:

This hearing was taken via videoconference in compliance with U.S. District Court Standing Order(s) during the COVID-19 pandemic.  Transcript accuracy may be affected by limitations associated with use of electronic technology, including but not limited to sound distortion or audiovisual interference.